UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| NATASHA JONES-BELL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DYNAMIC RECOVERY SOLUTIONS, LLC, CF MEDICAL, LLC and JOHN DOES 1-25,<br><br>Defendant(s). | Case No. 2:18-cv-13634-TGB-EAS |

**PLAINTIFF NATASHA JONES-BELL'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) and FED R. CIV. P. 12(b)(6)**

## I.    <u>PRELIMINARY STATEMENT</u>

Plaintiff Natasha Jones-Bell ("Ms. Jones-Bell") respectfully submits this Memorandum of Law in opposition to the motion for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (the "Motion") (Doc. 14) filed by Defendants Dynamic Recovery Solutions, LLC and CF Medical, LLC ("Defendants"). By way of the Motion, Defendants seek to dismiss Ms. Jones-Bell's

complaint summarily.  As set forth in detail below, there is no basis for the Motion and Defendants' Motion to Dismiss should be denied in its entirety.

## II.   **STATEMENT OF FACTS**

On November 20, 2018, Ms. Jones-Bell filed a putative class action complaint (the "Complaint") (Doc. 1) against Defendants setting forth two counts alleging false, deceptive, misleading, and unfair debt collection practices in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* (the "FDCPA"). Defendants' violations stem from a collection letter dated December 7, 2017, sent to Ms. Jones-Bell (the "Letter").

Defendants' Letter offered Ms. Jones-Bell several settlement options to satisfy the alleged debt for less than the alleged full amount owed on her account of $434.00. Complt. ¶¶ 31-32. Option Three offered her the option of settling the account in full for $282.10, payable in four payments of $70.53 each. Complt. ¶ 32c, see also Letter attached to the Complaint as Ex A. This third payment option was confusing and misleading to Ms. Jones-Bell (and any least sophisticated consumer who received a similar letter from Defendants). Complt. ¶ 33. Specifically, Defendants' Letter offered Ms. Jones-Bell a purported settlement amount of $282.10. However, should Ms. Jones-Bell have accepted this offer, she would have remitted four payments each of $70.53 for an actual amount paid of $282.12 –

thereby rendering Defendants' Option Three settlement offer false and deceptive under §§1692e and 1692f of the FDCPA. Complt. ¶¶ 35-36.

In drafting these settlement options, Defendants strategically determined the amount of each offer with full knowledge that the offer was misleading and was an intentional and deceptive attempt to collect more from the consumer than the amount she believed she would be paying. Complt. ¶ 34. Defendants contend that their intentional and deceptive attempt to collect a mere $.02 more from a consumer is *de minimus* and the result of a "rounding tactic" used in all collection software programs. However, Defendants' conduct was intentional and strategically created to appear *de minimus* with the belief that the least sophisticated consumer would fail to notice this discrepancy, instead concentrating only on Defendants' unfair enticement to settle the debt for an amount less than the alleged full amount of the debt. Complt. ¶ 37.

No matter their excuses, Defendants' Letter was deceptive and intentionally sought to collect more from the least sophisticated consumer than the purported amount of their settlement offer. There is no dispute that the Letter was false. Such a falsity constitutes an informational injury which, an overwhelming majority of courts have held, conveys Article III standing upon a consumer as it applies to the FDCPA. Additionally, Ms. Jones-Bell has sufficiently pled that Defendants' Letter was strategically drafted to mislead the consumer to pay more than she believed she

was paying. To that end, the Letter speaks for itself. When viewed in aggregate over a class of consumers, Defendants' intentionally false and misleading Letter leads to a windfall gain of deceptively collected funds from unsuspecting consumers. Complt. ¶ 40. This is exactly the type of behavior Congress sought to curtail when implementing the FDCPA. Accordingly, Defendants' Motion must be denied in its entirety.

## III.   STANDARD OF REVIEW

### A.   Rule 12(b)1 Standard

Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of "cases" and "controversies." U.S. Const. art. III, § 2.  To possess the constitutional component of standing, a party must meet three requirements: (1) [the party] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992).  For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* at 560.  "For the injury to be "concrete," it must be "real," and not "abstract"; however it need not be tangible." *Michael v. Hovg*, 2017 U.S.Dist. LEXIS 3757, at *5 (S.D.Fla. Jan. 10, 2017).  "An allegation of future injury

may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014).

A 12(b)(1) motion "can either attack the factual basis for jurisdiction, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). A facial challenge to the Court's subject matter jurisdiction like this one, "merely questions the sufficiency of the pleading." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). "In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions." *Id.*

**B.      Rule12(b)(6) Standard**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Phinn v. Capital One Auto Fin., Inc.*, 502 F.Supp. 2d 625 at *626 (E.D.Mi. June 11, 2007); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). When an allegation is capable of

5

more than one inference, it must be construed in the plaintiff's favor. *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993). Hence, a judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations. *Wright v. MetroHealth Med. Ctr.,* 58 F.3d 1130, 1138 (6th Cir. 1995).

The complaint should give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). "In practice, 'a … complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996)(quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). "The Plaintiff need no try to prove his case in the complaint. But there must be 'more than a sheer possibility that the defendant has acted unlawfully.'" *Forgues v. Select Portfolio Servicing*, 2015 U.S.Dist.LEXIS 164297 at *4-5 (N.D.Oh. Dec. 8, 2015)(citing Fed. R. Civ. P. 8).

Ms. Jones-Bell's Complaint avers the required elements to prove her claim against Defendants for violations of the FDCPA and Defendants' motion to dismiss must be denied.

## C.    The Least Sophisticated Consumer Standard

To determine whether a debt collector's conduct runs afoul of the FDCPA, "[c]ourts must view any alleged violation through the lens of the 'least sophisticated consumer' – the usual objective legal standard in consumer protection cases." *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443 at *450 (6th Cir. 2014) (quoting *Gionis v. Javitch, Block, Rathbone, LLP*, 238 F. App'x 24, 28 (6th Cir. 2007). "As we have explained:

> 'The basic purpose of the least-sophisticated consumer standard is to
> ensure that the FDCPA protects all consumers, the gullible as well as
> the shrewd.' [*Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.
> 1993).] 'This effort is grounded, quite sensibly, in the assumption that
> consumers of below-average sophistication or intelligence are
> especially vulnerable to fraudulent schemes.' *Id*. at 1319. The
> standard thus serves a dual purpose: 'it (1) ensures the protection of
> all consumers, even the naïve and the trusting, against deceptive debt
> collection practices, and (2) protects debt collectors against liability
> for bizarre or idiosyncratic interpretations of collection notices.'" *Id.*
> at 1320.

*Stratton,* 770 F.3d at *450 (quoting *Gionis*, 238 F.App'x at 28).

## IV.   LEGAL ARGUMENT

### A.   THE COMPLAINT ESTABLISHES SUBJECT MATTER JURISDICTION AND CANNOT BE SUMMARILY DISPOSED

Ms. Jones-Bell can establish an injury in fact and thus, can establish Article III standing. To establish such an injury, a plaintiff must show that she suffered "an invasion of a legally or protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560. For

7

an injury to be "particularized,' it "must affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548. However, "in the context of standing, 'concrete' is not necessarily synonymous with 'tangible.'" *Id.* at 1549.

To establish injury-in-fact for an FDCPA violation no economic injury is required. *In re Horizon Healthcare Servs. Data Breach Litig*., 846 F.3d 625, 640 n.24 (3d Cir. 2017) (citing *Robey v. Shapiro, Marianos & Cejda, LLC*, 434 F.3d 1208, 1211-12 (10th Cir. 2006) (holding that a violation of the FDCPA in the form of an unlawful demand for attorney's fees – even where the fees are not actually paid and so no economic injury was inflicted – is a cognizable injury for Article III standing). The clearly established test for standing is simply whether a defendant's conduct constitutes a concrete and particularized injury. For an injury to be particularized, it must "affect the plaintiff in a personal and individual way." *Spokeo*, 136 S.Ct. at 1548. To establish a "concrete" injury, said injury need not be "tangible," and intangible injuries, such as informational injuries, can also be concrete injuries sufficient to confer standing. *Id.* at 1549 (emphasis added).

Defendants' motion focuses on an analysis by the Sixth Circuit in *Hagy v. Demers & Adams*, 882 F.3d 616 (6th Cir. 2016). However, this case is presented in a misleading fashion and a more holistic approach to *Spokeo* is found in this Circuit's ruling in *Macy v. GC Servs. LP,* 897 F.3d 747 (6th Cir. 2018). In *Macy*, the plaintiff alleged that an initial dunning letter was deficient because it failed to inform the

plaintiff that the defendant was obligated to provide the additional debt and creditor information only if plaintiff disputed their debts in writing, thus failing to inform the consumer of her rights pursuant to § 1692g. *Id.* at 751. The *Macy* court found that the consumer plaintiffs demonstrated a sufficient risk of real harm to their underlying interest to establish a concrete injury without the need to allege any additional harm beyond the one Congress had identified. The Court further concluded that without the information required by § 1692g, the consumers were placed at a materially greater risk of falling victim to abusive debt collection practices, precisely the type of harm the statute was designed to prevent. *Id.* at 758. "GC's letter presents a risk of harm to the FDCPA's goal of ensuring that consumers are free from deceptive debt-collection practices because the letters provide misleading information about the manner in which the consumer can exercise the consumer's statutory right to obtain verification of the debt or information regarding the original creditor." *Id.* at 757. "To that end, the FDCPA grants a private right of action to a consumer who receives a defective communication." *Id.* at 758.

The *Macy* court distinguished *Hagy* because the plaintiffs in *Hagy* did not allege any risk of harm, and as such, the court did not conduct a risk-of-harm analysis. *See Macy*, at 761. On the other hand, "[w]here Congress confers a procedural right in order to protect a concrete interest, a violation of the procedure may demonstrate a sufficient 'risk of real harm' to the underlying interest to establish

concrete injury without 'need [to] allege any *additional* harm beyond the one Congress has identified. *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016) (*citing Spokeo*, 136 S.Ct. at 1449). Thus, including a false, deceptive or misleading statement in a debt-collection communication may cause an individual "to lose the very … rights that the law affords him." *Strubel*, 842 F.3d at 190. This presents a real risk of harm sufficient for standing.

Of note, "every circuit court to address similar post-Spokeo FDCPA standing issues has rejected defendant's standing challenges." *Byrne v. Or. One, Inc.*, 2017 U.S. Dist. LEXIS 132538, at *8-9 (D.Or. 2017). *See, e.g. Papetti v. Does,* 2017 U.S. App. LEXIS 9165, at *3-4 (2d Cir. 2017) (rejecting the defendant's misinterpretation of Spokeo and finding "there can be no dispute that Sections 1692e and g of the FDCPA 'protect an individual's concrete interests'); *Sayles v. Advanced Recovery Sys., Inc.*, 206 F.Supp. 3d 1210, (S.D. Miss. Aug. 26, 2016) ("Congress intended [§1692e(8)] of the FDCPA to address the dissemination of false information and abusive practices employed by debt collectors") *aff'd* at *Sayles v. Advanced Recovery Sys.*, 865 F.3d 246, 250 (5th Cir. 2017); *Ben-Davies v. Blibaum * Assocs.*, 695 Fed. Appx. 674, 676 (4th Cir. 2017) (finding Article III standing for FDCPA claim where the defendant demanded payment of an incorrect sum based on the calculation of an incorrect interest rate); *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 995 (11th Cir. 2016) (finding that plaintiff

sufficiently alleged a concrete informational injury because she did not receive the required FDCPA disclosure); *Garland v. Wells Fargo Home Mortg. Inc.*, 303 F.Supp. 554, 560 (E.D.Mich. 2018) (finding standing when defendant demanded a sum different from and greater than the sum owed); *Johnson v. Enhanced Recovery Co., LLC*, 325 F.R.D. 608 (N.D. Ind. 2018) (finding standing for a letter that falsely represented that payment would avoid credit reporting).

The weight of current court decisions supports the fact that Ms. Jones-Bell maintains Article III standing here as Defendants' intentional misstatement, falsely and deceptively attempting to collect more than the amount offered, was a real risk of harm. Ms. Jones-Bell was placed at a materially greater risk of falling victim to abusive debt collection practices. Furthermore, the false information in Defendants' Letter imposed an informational injury upon Ms. Jones-Bell by enticing her to accept a settlement offer, which amount, if paid, would amount to more than the amount offered in Defendants' Letter. Ms. Jones-Bell sustained an injury in fact as contemplated by the majority of courts in this country and Defendants' motion under Rule 12(b)(1) fails.

**B.   THE MOTION SHOULD BE DENIED AS DEFENDANTS'
LETTER VIOLATES THE FDCPA**

As stated, *supra,* Defendants' violations stem from a December 7, 2017 collection letter sent by Defendant Dynamic to Ms. Jones-Bell on behalf of Defendant CF Medical. Defendants' Letter offered Ms. Jones-Bell several

settlement options. The specific portion of the Letter that violates the FDCPA lies

in Option 3 which states:

> You may resolve your account for $282.10 in 4 payments starting on
> January 21, 2018. To comply with this offer, payments should be no
> more than 30 days apart. We are not obligated to renew this offer.
> Upon receipt and clearance of these four payments of $70.53, this
> account will be considered satisfied and closed, and a satisfaction
> letter will be issued.

This offer constitutes, without question, a false and misleading statement to the

consumer. Specifically, it appears to offer Ms. Jones-Bell the option to settle her

alleged debt of $434.00 for the reduced total amount of $282.10. In reality,

Defendants are actually charging Ms. Jones-Bell $282.12 to settle the debt, as the

required four payments of $70.53 each total more than Defendants' offer states.

This was a deliberate attempt by Defendants to deceptively entice Ms. Jones-Bell

to accept what appears to be one specific amount when, in truth, she would be

paying more than the amount Defendants' purportedly proposed in their Letter.

Defendants respond that the $.02 difference between the settlement offer and

the amount which would actually be paid by Ms. Jones-Bell is (1) the result of a

rounding error contained in Defendants' collection software and (2) a *de minimus*

discrepancy in payment amounts and, therefore, does not violate the FDCPA.

Defendants are mistaken.

Debts that are misstated by relatively small amounts have been found to

violate §1692e of the FDCPA.  In *Sunga v. Rees Broome, P.C.,* 2010 U.S. Dist.

LEXIS 81970 (E.D.Va Aug 12, 2010), the court upheld the plaintiff's §1692e claim, denying the debt collector's motion to dismiss, where the debt collector improperly added an interest payment of $2.57, rather than the correct amount of $1.16, finding plaintiff's allegations "sufficient to support a claim that Defendant falsely misrepresented the amount Plaintiff owed." *Id.* at *11. In *Gorman v. Messerli & Kramer, P.A.*, 2016 U.S. Dist. LEXIS 23474 (D. Minn. Feb. 25, 2016), the court upheld the plaintiff's claims for alleged violations of §§ 1692e and 1692f where the debt collector added an impermissible $35.00 fee to plaintiff's amount owed.

Further, in addressing the issue of materiality, the *Gorman* court stated "a debt collector's false statements in a dunning letter asserting that a debtor owes an amount the debt collector is unauthorized to collect should almost always be considered material because of the FDCPA's stated aim to halt 'the abusive, deceptive and unfair debt collection practices by many debt collectors.'" *Id.* at *14 (quoting 15 U.S.C. §1692(a).) The FDCPA is a strict liability statute which "imposes liability without proof of an intentional violation." *See Reich v. Van Ru Credit Corp.*, 191 F.Supp. 3d 668, 672 (E.D.Tx., June 8, 2016) (*quoting Glover v. F.D.I.C.*, 698 F.3d 139, 149 (3d Cir. 2012).

Finally, Ms. Jones-Bell seeks class certification here because, when viewed in aggregate over a class of consumers who received this or a similar letter from

Defendants, Defendants' unauthorized collections lead to potentially exorbitant amounts illegally charged and profited from by Defendants.  **"Congress's goal was not to grant a remedy to each debtor deprived of $35, but instead to deter debt collectors from denying entire classes of debtors, *en masse*, of relatively small sums of money – such as $35."** *Gorman*, 2016 U.S. Dist. LEXIS 23474 at *14 *(emphasis added).* The *Gorman* court's holding highlights the importance of denying Defendants' motion in the present case.  For, a support of Defendants' contention that Ms. Jones-Bell's claims are *de minimus* would undermine the sole purpose of the FDCPA – to protect an entire consumer class from debt collectors' attempts to take advantage of a consumer's naivety, however seemingly innocuous. Further, by permitting a debt collector's, arguably minor, deceptive settlement offers, the court would be ignoring the fact that the Defendants' impermissible imposition of even two cents above the amount the consumer believes she is paying, can amount to thousands, if not millions, when paid by the potential number of consumers who unknowingly paid this false settlement amount. Accordingly, Defendants' argument that this was a simple rounding error and is *de minimus*, is anything but. Allowing Defendants to overcharge a consumer because, in this case, it is only by two cents would create court authority for small overcharges, in direct contradiction of the law.

At this stage of litigation, a motion to dismiss is improper and Ms. Jones-Bell is entitled to conduct discovery as to the size of the potential class who received this misleading and deceptive letter.

### C.   DEFENDANTS' PROFFERED CASE LAW IS NOT DISPOSITIVE HERE AND SHOULD NOT BE ADOPTED BY THIS COURT

In support of their motion to dismiss, Defendants cite to three cases which are either distinguishable from the facts of Ms. Jones-Bell's and/or not precedential in the Eastern District of Michigan.

First, Defendants rely on the rulings in *Matuszczak v. Miramed Revenue Group, LLC*, 2017 WL 5467117 (N.D.Ind. Nov. 13, 2017) and *Akoundi v. FMS, Inc.*, 2014 WL 3632008 (S.D.N.Y Jul. 22, 2014). Neither decision is binding on this court. Moreover, substantively, the facts of these cases are distinguishable from those of Ms. Jones-Bell's and, while the distinction is subtle, it is significant. The plaintiffs in both *Matuszczak* and *Akoundi*, received settlement offers from the defendant debt collectors. In *Matuszczak*, a representative for the debt collector offered the plaintiff the following settlement option: plaintiff could settle the debt at a 20% discount for the specific amount of $2,796.00.  The plaintiff alleged this was a violation of the FDCPA because 20% of the full amount of the debt actually amounted to $2,795.55. The facts in *Akoundi* are parallel to those in *Matuszczak*. In *Akoundi*, the plaintiff was offered the following settlement option: plaintiff could

settle the debt for 25% of the balance for the specific amount of $1,711.57. Again, the plaintiff here alleged violations of the FDCPA because 25% of the full balance of the debt amounted to $1,711.56. Both of these cases were dismissed by the courts, finding these plaintiffs had failed to state a viable claim under the FDCPA.

The subtle difference between the settlement offers made in the *Matuszczak* and *Akoundi* cases and Ms. Jones-Bell's case is significant. In *Matuszczak* and *Akoundi*, both defendant debt collectors offered to settle the plaintiffs' debts for a percentage of the full amount allegedly owed. In both cases the debt collectors stated the relevant percentage, calculated same, and proposed an exact amount which the plaintiffs could pay to satisfy the debt. The proposed settlement amount stated by the debt collector was a fixed numerical amount presented to each plaintiff.  First, it is plausible that a debt collector's computer software may use rounding when calculating a percentage of an amount owed. However, after calculating that percentage amount, the defendant debt collectors in both cases offered the consumer a fixed amount required to satisfy the debt – and these fixed amounts were the true and accurate amounts the plaintiffs could pay to resolve their balances.

This was not so in the offer contained in Ms. Jones-Bell's Letter. Here, the Defendants did initially offer her a set amount they allegedly required to satisfy the debt at a reduced settlement rate. But, the amount they told Ms. Jones-Bell she

<u>would be paying in acceptance of that settlement offer was false</u>. Defendants here intentionally attempted to entice Ms. Jones-Bell to accept what she thought was one amount, while actually offering a payment plan which amounted to a greater amount.

Furthermore, a rounding defense is not valid here. For example, Defendants could have easily determined the total settlement amount they wished to offer Ms. Jones-Bell. Then, when dividing it into the four required payments, they simply could have stated: the first three payments should each be for the amount of $70.53 and the final, fourth payment should be for the amount of $70.51. Not only did Defendants not choose this proper and accurate procedure in calculating their settlement offers, they intentionally and deceptively proposed one amount but then, without disclosure to the consumer, attempted to charge her more. It is this intentionally misleading behavior which differentiates the facts in Ms. Jones-Bell's case to those referenced by Defendants. The prevention of the use of unfair, deceptive and misleading collections tactics by debt collectors is the reason the FDCPA was enacted. Defendants' actions constitute this type of unacceptable behavior and, for that reason, their motion to dismiss must be denied.

Finally, Ms. Jones-Bell cannot simply ignore the case of *Brown v. Alltran Financial, LP*, 2018 WL 5923772 (W.D.Wis. Nov. 13, 2018). *Brown* closely parallels the facts of the present matter where the court ultimately dismissed the

plaintiff's complaint, finding that an offer differing "by a single cent would [not] be material in making a decision to repay or not repay a debt." *Id.* at *2. Simply put, *Brown* is not controlling law in this district. Just as Defendants have found one case which supports their motion for dismissal, so too has Ms. Jones-Bell offered compelling case law supporting the true fact that Defendants' Letter did, in fact, violate the FDCPA. Ms. Jones-Bell respectfully urges this Court to adopt her position that Defendants' deliberate and misleading debt collection tactics here are hardly *de minimus* or immaterial. Defendants have violated §§1692e and 1692f of the FDCPA and the motion must be denied.

## CONCLUSION

Ms. Jones-Bell has demonstrated that there is a viable cause of action against Defendants for violations of the FDCPA.  As a result of these violations, Ms. Jones-Bell was placed at an imminent risk of falling victim to Defendants' deliberate and deceptive attempt to charge her more than she believed she was paying to settle her account. Additionally, Ms. Jones-Bell incurred an informational injury as Defendants' Letter falsely alleged she would be paying one specific amount when, in fact, she would be paying more than what was represented in the Letter. As such, Ms. Jones-Bell has more than met her burden of averring (1) Article III standing to bring this suit and (2) Defendants' violation of both §§ 1692e and 1692f of the FDCPA.

For the aforementioned reasons, Ms. Jones-Bell respectfully requests that this Court deny Defendants' Motion to Dismiss in its entirety.

Respectfully Submitted,

**STEIN SAKS, PLLC**

Dated: February 12, 2019

/s/ Yaakov Saks
Yaakov Saks, Esq.
285 Passaic Street
Hackensack, NJ 07601
Phone (201) 282-6500
Fax (201) 282-6501
ysaks@steinsakslegal.com
*Attorneys for Plaintiff*
*Natasha Jones-Bell*

## Certification of Service

I, hereby certify that a copy of the foregoing and any attachments hereto were sent via CM/ECF on this 12th day of February, 2019 to all counsel of record.

/s/ Yaakov Saks
Yaakov Saks, Esq.